[No. 1187.]

## F. LIVINGSTON ET AL., APPELLANTS, v. THE STATE OF NEVADA, RESPONDENT.

PURCHASE OF TERRITORIAL BONDS—INTEREST—METHOD OF CALCULATION— STATUTE CONSTRUED.—In construing the provisions of the statute authorizing commissioners for the State to purchase the outstanding territorial bonds, bearing interest at nine and one-half per cent. per annum, "at such rate of premium as would guarantee to the purchaser four and one-half per cent. per annum interest on the amount paid during the life of the bonds," (Stat. 1879, 15, sec. 3): *Held,* that the statute fixes the sum which the commissioners are authorized to pay, and that the method of calculation is to take the bonds at the date of delivery, calculate the interest thereon at nine and one-half per cent. per annum, until the time when the bonds become due, add this interest to the principal, then discount this amount by four and one-half per cent. per annum for the same time and the balance is the amount authorized by the statute to be paid.

IDEM—DISCOUNT—PREMIUM ARITHMETICAL DEMONSTRATION.—The method of ascertaining the true discount and premium, and the amount to be paid for the bonds arithmetically demonstrated.

APPEAL from the District Court of the Second Judicial District, Ormsby County.

The facts are stated in the opinion.

*Robert M. Clarke,* for Appellants:

I. The sum of money which the plaintiff was entitled to receive under the contract is that sum which will guarantee

the state four and one-half per cent. per annum on the amount paid. To state the converse of the proposition: The state is required to pay for the bonds, including the coupons attached, a sum which, considering the use of money worth four and one-half per cent. per annum, interest payable annually during the life of the bonds and coupons, will be equal to the present value of the bonds and coupons attached. The state, under the terms of the law, is to pay for the bonds a sum of money which, placed at interest for the period of eight years and one month at four and one-half per cent. per annum, interest payable annually, will produce a sum equal to the value of the bonds. We contend that the value of the bonds depends upon the amount or face value, upon the time they have to run, upon the rate of interest expressed in the bonds or number of coupons attached, upon the time when the interest or coupons are payable, upon the present value of the use of money or rate of interest as expressed in the law, and that each of these elements is essential to make up the unit of value.

II. The rule of settlement governing the parties should be to compute the interest on the principal sum from the time when the interest commenced, to the time of the first payment in each case, then settle. Deduct the excess of interest due to Livingston from the sum due to the state; the balance will be a new principal; and so on to the end. Thus the excess of interest accruing to Livingston will constantly reduce the principal due from him to the state, and so constantly reduce the amount of annual interest due on the demand of the state against Livingston. (*Dean* v. *Williams*, 17 Mass. 417; *Wilcox* v. *Howland*, 23 Pick. 167; *Leonard* v. *Wilds*, 36 Me. 265; *Smith* v. *Shaw*, 2 Wash. C. C. 167; *Wright* v. *Wright*, 2 McCord (Ch.) 185; *Treat* v. *Stanton*, 14 Conn. 445; *Commonwealth* v. *Miller*, 8 S. & R. 452; *Ross* v. *Russell*, 31 N. H. 386; *Wasson* v. *Gould*, 3 Blackf. 18; *McFadden* v. *Fortier*, 20 Ill. 509; *Riney* v. *Hill*, 14 Mo. 500; *Williams* v. *Houghtaling*, 3 Cow. 86; *Stark* v. *Hunton*, 2 Green Ch. 300; Parsons on Notes and Bills, 425; Parsons on Cont. 147, with notes.)

III. Coupons are negotiable securities. (*National Bank* v. *Mount Tabor*, 52 Vt. 87; *Thomson* v. *Lee County*, 3 Wall. 327; *Bank U. S.* v. *Macalester*, 9 Pa. 475; *Murray* v. *Lardner*, 2 Wall. 110; *Aurora City* v. *West*, 7 Wall. 105; *City* v. *Lamson*, 9 Wall. 477.)

IV. The holder of a coupon may collect interest thereon after it becomes due. (*Gray* v. *State*, 72 Ind. 568; *National Bank* v. *Mechanics N. B.* 94 U. S. 437; *Heath* v. *Page*, 63 Pa. St. 108; 2 Dan'l Neg. Instr. sec. 1513 and notes; 3 Parson Con. 102; *City of Jeffersonville* v. *Patterson*, 26 Ind. 15; *Langston* v. *S. C. R. R. Co.* 2 S. C. 248.)

V. Appellants are entitled to the present worth of money due from the state, calculated from the date of the delivery of the bonds and coupons to the state's agent to the times when they were severally due and payable, at the rate or value of the use of money as specified in the law authorizing the contract.

*W. H. Davenport*, Attorney General, and *W. E. F. Deal*, for Respondent.

By the Court, HAWLEY, C. J.:

The act of the legislature providing for the purchase of the territorial bonds, for the benefit of the school fund, declares that the commissioners therein named are authorized to purchase the bonds, "if they can purchase the whole issue, (three hundred and eighty thousand dollars,) and not otherwise, if such purchase can be made at such rate of premium as would guarantee to the purchaser four and one-half per cent. per annum interest on the amount paid during the life of the bonds so purchased." (Stat. 1879, 15 sec 3.) In pursuance of the provisions of this act, the commissioners purchased the bonds from appellants. One hundred and sixty thousand dollars were delivered February 1, 1879, and two hundred and twenty thousand dollars were delivered April 1, 1879. At the time of the purchase there was six thousand three hundred and thirty-three dollars and thirty-three and one-third cents interest

due on the one hundred and sixty thousand dollars bonds, and one thousand seven hundred and forty-one dollars and sixty-six and two-thirds cents on the two hundred and twenty thousand dollars bonds. The amount paid for interest to date of purchase was eight thousand and seventy-five dollars. The amount paid for the bonds was four hundred ninety-one thousand six hundred and twenty-seven dollars and fifteen cents, making the total amount paid to appellants four hundred and ninety-nine thousand seven hundred and two dollars and fifteen cents. The territorial bonds so purchased were issued on March 1, 1872, and were made payable in fifteen years, with interest thereon at nine and one-half per cent. per annum. Interest coupons were attached to the bonds, and were made payable September 1st and March 1st of each year. The bonds would be due March 1, 1887. At the time of the delivery of the bonds to the commissioners, appellants claimed that there was an error in the method of computation in arriving at the amount that should be paid, and this suit was instituted by them for the recovery of the sum of sixteen thousand one hundred and eighty-five dollars and seventeen cents, a balance alleged to be due them on the purchase of the bonds.

Accepting as correct the theory contended for by appellants, that the amount to be paid is to be ascertained by an interpretation of the statute, and waiving all the preliminary and technical objections urged by respondent's counsel against the right of appellants to recover in this action, we are called upon to answer the question : " What is the sum which the state, under the terms of the law, is to pay for the bonds?" Appellants claim that, inasmuch as the interest on the bonds is payable semi-annually, the state must settle every year with itself, and must pay interest on its bonds every six months ; that the owners of the bonds were entitled to have this interest taken into the calculation at the end of each year, instead of at the end of the life of the bonds ; that the rule of settlement should be to " compute the interest on the principal sum from the time when

the interest commenced, to the time of the first payment in each case, *then settle ;* deduct the excess of interest due to Livingston from the sum due to the state. The balance will be a new principal ; and so on to the end." The authorities cited in favor of this method of computation have reference solely to the rule of computing interest in cases of partial payments on notes, or other evidences of indebtedness ; and the rule is stated as follows :

"Compute the interest on the principal sum from the time when the interest commenced, to the first time when a payment was made, which exceeds, either alone or in conjuction with the preceding payments, if any, the interest at that time due ; add that interest to the principal, and from the sum subtract the payment made at that time, together with the preceding payments, if any, and the remainder forms a new principal, on which compute and subtract the interest as upon the first principal ; and proceed in this manner to the time of the judgment." (2 Pars. Bills and N. 425, and authorities there cited.)

This rule is one of almost universal application in the class of cases referred to, and is always to be applied in such a manner as to prevent the interest forming a part of the principal so as to carry interest. It cannot, therefore, be invoked in favor of the rule as claimed by appellants in a case like this, because if the interest on the bonds in question is to be added to the principal each year, a settlement then made, and a new principal given, it requires no argument to show that such a computation would result in the interest drawing some interest.

Other authorities are cited to the effect that the interest coupons attached to the bonds were negotiable securities, and that the holders thereof might collect interest thereon after they became due, if the same was not paid at maturity. These principles will be admitted as correct, as they have not been questioned, and have no special application to the facts of this case. No question is raised as to the power of the legislature to pass a law authorizing a computation to be made upon the method claimed by appellants. The

question is whether the law, as passed, authorizes such a method of computation. If the bonds had not been purchased, the state would only have been required to pay the holders the amount of the principal and interest thereon at the rate of nine and one-half per cent. per annum for the life of the bonds. Of course, the bonds were of greater value to the holders on account of the interest being made payable semi-annually, because the interest when paid could be reinvested in other securities. A banking-house or capitalist engaged in the business of loaning money and discounting debts, due at a future time, would naturally take this fact into consideration in ascertaining the present value of the bonds, and would, doubtless, give more for the bonds than if the interest was not to be paid until the maturity of the bonds. Appellants might, therefore, have refused to sell the bonds to the state on the ground that they were of greater value than the sum offered, and if they thought the method of computation invoked by the commissioners and other experts was not just and equitable, they ought to have refused to deliver the bonds upon such terms. The law could not, and did not attempt to, compel appellants to sell the bonds. The sale was optional upon their part. They were at liberty, if they saw fit, to sell the bonds for a less amount than they received; but in no event can they recover any greater amount than the statute authorizes to be paid. Upon what method of calculation is this sum to be determined?

Whatever may be the rules of banking houses, or the methods adopted in the United States treasury department, as to the computation of interest on bonds, it is evident, to our minds, that the statute in question did not contemplate that the method of computation, as claimed by appellants, should be adopted in arriving at the amount to be paid by the commissioners for the state. The statute is clear, plain and unambiguous. The purchase was to be made at such rate of premium as would guarantee to the state four and a half per cent. per annum interest during the life of the bonds. It is not a question as to the real marketable value

of the bonds. The law itself fixes the sum which the commissioners are authorized to pay. It may be that the bonds would have commanded a greater premium in the financial markets than the state was willing to give. But the law is positive and direct in its terms that the purchase is to be made "at such rate of premium as would guarantee to the purchaser four and one-half per cent. per annum interest on the amount paid, during the life of the bonds so purchased."

The question is one of computation, to be determined by the ordinary rules of arithmetic governing the method of ascertaining the true discount on notes and bonds. Take the bonds at the date of delivery, calculate the interest thereon at nine and one-half per cent. per annum until March 1, 1887, (when the bonds would become due,) add the interest to the principal, then discount this amount by four and one-half per cent. per annum for the same time, and we will have the sum that is to be paid under the provisions of the statute. By this method the state realizes four and one-half per cent. per annum interest on the amount paid during the life of the bonds, which the statute says must be guaranteed to it. To ascertain the true discount, divide the amount of the debt (principal and interest on the bonds) by one dollar, plus the product of the rate multiplied by the time in years; the quotient will be the sum that the state will pay for the bonds. Subtract this sum from the amount of the debt, and you have the true discount. Subtract the principal sum (without interest) from the quotient, and you have the premium. Under this method, what is the result? One hundred and sixty thousand dollars purchased February 1, 1879, with interest at nine and one-half per cent. per annum until March 1, 1887, (eight years and one month,) amounts to two hundred and eighty-two thousand eight hundred and sixty-six dollars and sixty-six two-thirds cents. The interest on one dollar at four and one-half per cent. per annum for eight years and one month would be thirty-six and three hundred and seventy-five thousandths cents. Plus one dollar,

under the rule above stated, makes one dollar and thirty-six and three hundred and seventy-five thousandths cents. Divide two hundred and eighty-two thousand eight hundred and sixty-six dollars and sixty-six and two-thirds cents by one dollar and thirty-six and three hundred and seventy-five thousandths cents, and we have the sum of two hundred and seven thousand four hundred and eighteen dollars and twenty-seven and sixty-nine thousandths cents. This subtracted from the amount of the principal sum and interest leaves seventy-five thousand four hundred and forty-eight dollars and thirty-nine and five hundred and ninety-six thousandths cents as the discount, which is equal to the interest on the sum of two hundred and seven thousand four hundred and eighteen dollars and twenty-seven and sixty-nine thousandths cents at four and one-half per cent. per annum for eight years and one month. The premium to be paid is forty-seven thousand four hundred and eighteen dollars and twenty-seven and sixty-nine thousandths cents. Two hundred and twenty thousand dollars delivered April 1, 1879, with interest at nine and one-half per cent. per annum until March 1, 1887, (seven years and eleven months,) amounts to three hundred and eighty-five thousand, four hundred and fifty-eight dollars and thirty-three and one-third cents. The interest on one dollar at four and one-half per cent. per annum for seven years and eleven months would be thirty-five and six hundred and twenty-five thousandths cents, plus one dollar makes one dollar and thirty-five and six hundred and twenty-five thousandths cents. Divide three hundred and eighty-five thousand four hundred and fifty-eight dollars and thirty-three and one-third cents by one dollar and thirty-five and six hundred and twenty-five thousandths cents and we have the quotient two hundred and eighty-four thousand, two hundred and eight dollars and ninety and nine hundred and thirty-seven thousandths cents as the sum which the state is to pay for the bonds. This subtracted from the principal amount, with interest, leaves one hundred and one thousand two hundred and forty-nine dollars

and forty-two and three hundred and ninety-six thousandths cents as discount, which is equal to the interest on the sum paid for the purchase, at the rate of four and one-half per cent. per annum during the life of the bonds. The premium to be paid is sixty-four thousand two hundred and eight dollars and ninety and nine hundred and thirty-seven thousandths cents. This was the method adopted by the commissioners in making the computation, and, in our opinion, it is the only method of computation that is warranted by the statute.

The judgment of the district court is affirmed.